SAMUEL BUNKER *vs.* JOSEPH W. GORDON, and another.

Somerset. Opinion December 10, 1888.

*Levy. Mortgage. Notice to Attorney. Notice to Principal.*

The plaintiff and defendants claim the demanded premises under the same person, Warren Hardy, the plaintiff by levies against him, and the defendants by a mortgage from him. The levies were made after, but recorded before, the mortgage was. The plaintiff had actual notice of the mortgage before he attached, through information to his attorney, communicated by Hardy in his disclosure as a poor debtor in the presence of the attorney.

*Held,* That the burden is on the plaintiff to show that his proceedings should not be affected by such notice, if any reason why they should not exist.

The attorney testifies that he told the plaintiff that Hardy had sworn that such a mortgage rested on the premises, and that he (witness) had examined the records and found no mortgage, and that he did not believe there was any, and he thinks that he made inquiry of the mortgagee, and that he told the plaintiff so, and that he could not find there was any, and concluded there was none.

*Held,* that, on this evidence the effect of the notice is not explained away. The evidence is too indefinite and uncertain for that purpose.

ON REPORT. This was an action of trespass q. c., for cutting grass on land which the plaintiff claimed to own. The defendants pleaded the general issue. After the evidence was closed, the

case was, by agreement, reported to the law court to render such judgment, upon the admissible testimony, as the law requires.

The main issue between the parties was that of title to the land, and turned upon the question whether or not the plaintiff had notice of a prior unrecorded mortgage, upon the reported testimony, which is stated in the opinion.

*S. S. Brown, J. J. Parlin* with him, for plaintiff.

The levies being prior to the record of the mortgage, under which the defendants claim prior title, give the plaintiff a good title, unless plaintiff had "actual notice" of the existence of this earlier mortgage title.

No special reason is suggested why the plaintiff's attorney, Mr. Walton who made the writ, should remember a mortgage which he made eight years before. Ordinarily, all a lawyer knows about the premises on which he draws a deed, is the boundaries described in some deed placed in his hands. Having heard Hardy disclose that there was such a mortgage, he consulted the records and found no such mortgage recorded. He interviewed the supposed mortgagee. He found no proof of its existence. He informed the plaintiff he could find no claim of the kind on the land, the extent of his investigations, and that he had made up his mind there was none. This would seem to cover the whole ground of the plaintiff's duty as laid down by this court in *Knapp* v. *Bailey*, 79 Maine, 195.

The knowledge of Jones, unless communicated to the plaintiff, would not interfere with the title which he acquired through the Jones levy. *Trull* v. *Bigelow*, 16 Mass. 405; *Coffin* v. *Ray*, 1 Met. 212.

It was held in *Stanley* v. *Perley*, 5 Maine, 369, that the uncommunicated knowledge of the officer, would not be notice to the plaintiff.

This knowledge, on the part of an agent, must be active in the mind of the agent at the time of the performance of the act to be affected. *Fairfield Savings Bank* v. *Chase*, 72 Maine, 226, 228; *Jones* v. *McNarrin*, 68 Maine, 334, 337; *Lawrence* v. *Tucker*, 7 Maine, 195; *Farnsworth* v. *Childs*, 4 Mass. 636.

*A. H. Ware, Merrill and Coffin* with him, for defendants.

Bunker, his attorney, the officer, and his grantors having notice of the existence of the mortgage, nothing passed or was acquired by the levies, and subsequent conveyances to the plaintiff, unless perhaps some right in the equity of redemption from the mortgage.

The attorney drew the mortgage deed, witnessed it, and took the acknowledgment. He heard, as plaintiff's attorney, Warren Hardy disclose its existence only a few days before the attachments. Notice to Walton was notice to Bunker. Hardy was arrested for the purpose of ascertaining by a disclosure whether this mortgage which the attorney knew he himself had drawn, and which had not been recorded, still existed and was unpaid. What further inquiries did the attorney make, and of whom did he make them? He does not say. If the record showed no incumbrance, and the attorney did not think there was any mortgage, why did he not at once cause the execution to be extended on the premises?

Charles L. Jones had notice of the mortgage. He was counsel for Hardy at his disclosure, a short time only, before he made an attachment himself. Moulton, the officer testifies "he thinks Mr. Jones made the remark that he (Jones) supposed there was a mortgage there."

William H. Stevens, guardian of Alice A. Jones, and who acquitted her interest in the Jones levy to the plaintiff, was present, as a magistrate, at Hardy's disclosure.

The levying creditors never took actual possession of the premises, though sixteen years have since elapsed. They were aware of the infirmity of their title.

The Jones levy was set off to him at the price of $70.23. This, with interest, amounts to $132.47 when it was conveyed for $20 to the plaintiff by Stevens as guardian,—hardly enough to pay expense of the levy after deducting the expenses, in the probate court, attending the sale.

On the question of notice, counsel cited: *Smith* v. *Ayer*, 101 U. S. Sup. Ct., 320; *Astor* v. *Wells*, 4 Wheat. 466; *May* v. *LeClaire*, 11 Wall. 217; *The Distilled Spirits*, Ib. 356; *Tucker* v. *Tilton*, 55 N. H. 223; and cases cited in *Knapp* v. *Bailey*, 79 Maine, 195.

PETERS, C. J.   The plaintiff claims title to certain land under two levies thereon against Warren Hardy, one made by himself on a portion of the land, and the other made on another portion by Charles L. Jones, who conveyed his levy to the plaintiff.   The two levies give an apparent title in the land to the plaintiff.

The defendants are claimants of the land under an assignment of a mortgage, given by Warren Hardy to Daniel S. Gordon, their ancestor, on the same property.   The attachments and levies were made after the mortgage was, but were recorded first.   If not disturbed by other facts, the plaintiff's title would be the best.

But the defendants contend that the plaintiff, when the attachments and levies were made, had actual notice of the existence of the mortgage, and that that fact deprives the plaintiff of his apparent priority of title.

The mortgage was made in September 1864, but was not recorded until January 1880.   The attachments, on which the levies are founded, were made in January 1872, and the levies were completed and recorded the same year.

In December 1871, a short time prior to the attachments, Warren Hardy made a disclosure on an execution, which grew out of another transaction of the parties, in favor of the present plaintiff, in which he disclosed the existence of the unrecorded mortgage and the notes secured thereby.   At that examination, Mr. Jones attended as counsel for Hardy, and S. J. Walton appeared as the attorney for the plaintiff.   This disclosure gave to Jones personally, and to the plaintiff through his attorney, actual notice of the notes and mortgage.

The defendants, under these facts, appearing to have the better title, the result finally depends on whether that notice continued good, or whether it was counteracted and avoided by an investigation, immediately pursued by the plaintiff's attorney, which reasonably led him to believe that there was no such mortgage. And this, in turn, depends upon the testimony of Mr. Walton, called as a witness by the defendants.   He testifies that he drafted and witnessed the execution of the mortgage, but had wholly forgotten the fact.   He further testified: "He (Hardy) stated that there was a mortgage to Daniel S. Gordon resting

upon the premises. * * * It was when he was disclosing under one of the executions in favor of Mr. Bunker. * * * He said there was a mortgage, that covered that land, existing, running to Daniel S. Gordon. * * * I told him (Bunker) my opinion in regard to it. I told him that Mr. Hardy stated in his disclosure that there was a mortgage on these premises, but that I had examined, or caused to be examined, I don't remember the language now, the records, and I could find no mortgage on record, and I had made inquiries. I have the impression that I told him I had inquired of Daniel S. Gordon, and I could not find out that there was any mortgage, and I didn't think there was any. These were the communications I made to Mr. Bunker. I do not remember how long it was after that before I made the writ. * * * *Q.* You talked with Gordon ? *A.* I think I did. *Q.* And you came to the conclusion that there was no mortgage and so informed Mr. Bunker? *A.* That is my recollection. I informed him what Mr. Hardy said and what I had done. I made a levy on the same land embraced in the mortgage," meaning in his own name on his own debt. The questions and answers were on cross examination. The evidence is plenary from other witnesses that the existence of the mortgage was disclosed by Hardy on his poor debtor examination.

Although the case may be rather near the line, we are induced by the evidence to believe that the plaintiff had actual notice of the mortgage when his attachment was made. That Jones had such notice when he attached on his demand, cannot be questioned. We do not see that the notice has been explained away. Mr. Walton's personal as well as professional interest led him, perhaps, too easily to think no mortgage existed. His investigation, from anything exhibited to us, did not warrant the conclusion. The burden is on the plaintiff to explain why he is not to be affected by the notice he received.

Mr. Walton "thinks" he talked with Gordon, the mortgagee. He does not seem to be positive that he did. He has "the impression" that he so told the plaintiff. He is not only doubtful about that, but he nowhere says that Gordon admitted or intimated that he had not a mortgage. No reply from Gordon is related.

Inquiry, pointed inquiry, should have been made of him, such as would have elicited the truth about it. Nor is it pretended that Gordon refused to make answer to any inquiries. The notice of the mortgage came in an official way in a sworn statement, and should not have been lightly regarded. It is hardly to be supposed that Hardy swore falsely, or that Gordon would have denied a transaction in his own favor, the honesty of which is not now questioned, or that Walton would have forgotten that Gordon repudiated the mortgage transaction had he done so. Walton may have believed there was not a mortgage, or a valid mortgage, but that would appear to have been his inference or supposition not founded on proof. As touching the propositions of law, on the facts that we have reviewed, the following cases have a close application. *Jones* v. *McNarrin*, 68 Maine, 334, 337; *Fairfield Savings Bank* v. *Chase*, 72 Maine, 226; *Knapp* v. *Bailey*, 79 Maine, 195.

*Plaintiff nonsuit.*

WALTON, DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.